UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

JERRY FINCH JR.,

                Plaintiff,

                -against-

BROOKHAVEN MEMORIAL HOSPITAL,
John Jane; SUFFOLK COUNTY MEDICAL STAFF,
John Jane,
                Defendants.
----------------------------------------------------------------x

<u>ORDER OF
PARTIAL DISMISSAL</u>
11-CV-0577 (SJF) (WDW)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ AUG 24 2011 ★

LONG ISLAND OFFICE

FEUERSTEIN, United States District Judge:

On January 25, 2011, incarcerated plaintiff Jerry Finch, Jr. ("plaintiff") filed this *pro se* action pursuant to 42 U.S.C. § 1983, accompanied by an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. For the reasons set forth below, plaintiff's application to proceed *in forma pauperis* is granted; his claims against defendant Brookhaven Memorial Hospital Medical Center ("Brookhaven Hospital"), its John or Jane Doe employees and the Suffolk County Correctional Facility ("SCCF"), i/s/h as Suffolk County Medical Staff, are *sua sponte* dismissed with prejudice; and his claims as construed to be against the County of Suffolk ("the County") are dismissed without prejudice.

I.    <u>Background</u>

Plaintiff alleges that on or about April 28, 2008, he fell and sustained injuries while at the SCCF in Yaphank ("SCCF-Yaphank"). (Complaint [Compl.], at ¶ IV). Plaintiff was taken to Brookhaven Hospital, where he was "evaluated" and released to the SCCF in Riverhead ("SCCF-Riverhead"). (<u>Id.</u>) Plaintiff alleges that he was "evaluated" by the medical staff at SCCF-

1

Riverhead, who prescribed him eight hundred (800) milligrams of Ibuprofen. (Id.) Thereafter, plaintiff was returned to SCCF-Yaphank, where he allegedly complained of discomfort in his back to, and requested medical treatment from, its medical staff.

Plaintiff alleges that the medical staff at Brookhaven Hospital and both SCCF facilities (collectively, "SCCF") failed to prescribe the correct medication for him, ultimately resulting in his hospitalization on June 16, 2008. (Compl. ¶ IV). Plaintiff seeks monetary damages in the amount of eighty million dollars ($80,000,000.00) to compensate him for the "major" back pain, dizziness and chest pain he allegedly suffers as a result of defendants' prescription of the wrong medication to him and failure to treat him. (Compl., ¶¶ IV.A and V).

II. Discussion

    A. *In Forma Pauperis* Application

Plaintiff's financial status, as set forth in the declaration in support of his application to proceed *in forma pauperis*, qualifies him to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Accordingly, plaintiff's application to proceed *in forma pauperis* is granted.

    B. The Prison Litigation Reform Act

Pursuant to 28 U.S.C. § 1915A, a district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity." 28 U.S.C. § 1915A. Upon review, a district court shall dismiss a prisoner complaint *sua sponte* if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted;

or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007); see also Liner v. Goord, 196 F.3d 132,134 & n.1 (2d Cir. 1999) (noting that under the Prison Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted but mandatory).

Pursuant to 28 U.S.C. § 1915(e)(2)(B), a district court must also dismiss an *in forma pauperis* complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.

It is axiomatic that district courts are required to read *pro se* complaints liberally, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest[].'" Chavis, 618 F.3d at 170 (quoting Harris v. City of New York, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 124 (2d Cir. Sept. 2010); see also Jackson v. Birmingham Board of Education, 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

    C.    Section 1983

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983 (2000). To state a Section 1983 claim, a plaintiff must allege: (1) that the

challenged conduct was "committed by a person acting under color of state law" and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010), cert. denied sub nom Cornejo v. Monn, 131 S. Ct. 158, 178 L. Ed. 2d 243 (2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)).

### 1. Color of State Law

Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)(citation omitted). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) (internal quotation marks omitted).

Brookhaven Hospital is a private, not-for-profit, community hospital and its staff are not public employees. See, e.g. Hollman v. County of Suffolk, No. 06 CV 3589, 2011 WL 280927, at *4 (E.D.N.Y. Jan. 27, 2011). Generally, private hospitals and their staff do not act under color of state law for Section 1983 purposes. See White v. St. Joseph's Hosp., 369 Fed.Appx. 225, 226 (2d Cir. Mar. 10, 2010) ("[P]rivate actors and institutions, such as ... hospitals ... are generally not proper § 1983 defendants because they do not act under color of state law."); Hollman, 2011 WL 280927, at * 4; Urena v. Wolfson, No. 09 CV 1107, 2010 WL 5057208, at *10 (E.D.N.Y. Dec. 6, 2010); Kavazanjian v. Rice, No. 03-CV-1923, 2008 WL 5340988, at * 12 (E.D.N.Y. Dec. 22, 2008). Therefore, plaintiff's claims against Brookhaven Hospital and its employees are

dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.[1]

2.  Claims against the SCCF

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); Franko v. Suffolk County Correctional Facility, No. 10-cv-5449, 2011 WL 1004891, at * 1 (E.D.N.Y. Mar. 17, 2011) (holding that the SCCF, as an administrative arm of the County of Suffolk, lacks the capacity to be sued); Rodriguez v. Suffolk County Correctional Facility, No.

---

[1] Although liability may be imposed under Section 1983 upon private individuals who are not state actors pursuant to a conspiracy theory, see Ciambriello v. County of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002), the factual allegations in the complaint do not plausibly suggest the existence of any conspiracy between Brookhaven Hospital and the SCCF. Similarly, although state action may also be found if "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself,'" Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)), the factual allegations in the complaint do not plausibly suggest: (1) that Brookhaven Hospital "acts pursuant to the 'coercive power' of the state or is 'controlled' by the state;" (2) that Brookhaven Hospital "has been delegated a public function by the [s]tate;" or (3) that (a) "the state provides, *significant encouragement*' to [Brookhaven Hospital]," (b) Brookhaven Hospital is a "willful participant in *joint activity* with the [s]tate" or (c) the functions of Brookhaven Hospital are "'*entwined*' with state policies." Hollander v. Copacabana Nightclub, 624 F.3d 30, 34 (2d Cir. 2010), cert. denied, 131 S.Ct. 914, 178 L.Ed.2d 751 (2011) (emphasis and alterations in original) (quoting Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (per curiam)); see also Hollman, 2011 WL 280927, at * 5-6 (recognizing that general hospital functions are not "the traditional exclusive prerogative of the state" sufficient to satisfy the "public function" test and finding that Brookhaven Hospital and Suffolk County are not so interdependent so as to satisfy the "symbiotic relationship" test). "[T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action." White, 369 Fed. App. at 226. Moreover, "[p]roviding isolated emergency treatment to a prisoner on equal terms with the general public * * * does not constitute state action." Kavazanjian, 2008 WL 5340988, at * 12.

08-cv-2041, 2009 WL 205052, at * 1, n. 1 (E.D.N.Y. Jan. 27, 2009) (accord). Since the SCCF is an administrative arm of Suffolk County, without a legal identity separate and apart from the County, it lacks the capacity to be sued. Accordingly, plaintiff's claims against the SCCF are dismissed in their entirety with prejudice. However, since plaintiff is proceeding *pro se*, his Section 1983 claims against the SCCF will be construed as claims against the County.

3.  Monell Claim

Even construing plaintiff's Section 1983 claims against the SCCF to be claims against the County, his claims are dismissed because the factual allegations in the complaint do not plausibly suggest any "injury to a constitutionally protected right * * * that * * * was caused by a policy or custom of the [municipality] responsible for establishing final policy." Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (internal quotations and citation omitted); see also Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-1, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). "A municipality may be liable under Section 1983 only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Cash v. County of Erie, — F.3d —, 2011 WL 3625093, at * 6 (2d Cir. Aug. 18, 2011) (internal quotations and citations omitted). A municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. See Monell, 436 U.S. at 691, 98 S.Ct. 2018; see also Connick v. Thompson, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (5-4 decision) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los Angeles County, California v. Humphries, 131 S.Ct. 447, 452, 178 L.Ed.2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, e.g., *solely* because it employs a tortfeasor."

6

(emphasis in original) (quotations and citation omitted)).

To state a Section 1983 claim against a municipality, a plaintiff must allege: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe, 542 F.3d at 36; see also Connick, 131 S.Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S.Ct. 2018)); Humphries, 131 S.Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S.Ct. at 1359. In addition, "[i]n limited circumstances, a municipality's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of Section 1983." Id. "To satisfy [Section 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Id. (internal quotations, alterations and citation omitted).

Plaintiff has not alleged: (1) the existence of a formal policy which is officially endorsed by the County or SCCF; (2) actions taken or decisions made by County or SCCF officials with authority to make final decisions which caused the alleged violations of his civil rights; (3) a County or SCCF practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of policymaking officials for the County or SCCF; or (4) a failure by County or SCCF policymakers to properly train or

7

supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, plaintiff's Section 1983 claims against the County, and its "John and Jane Doe" employees in their official capacity, are dismissed with prejudice **unless plaintiff files an amended complaint re-pleading his Section 1983 Monell claim against the County within thirty (30) days from the date this Order is served with notice of entry upon him.**

4. "John or Jane Doe" Defendants

In light of the dismissal of all claims against Brookhaven Hospital, the "John and Jane Doe" employees of Brookhaven Hospital, the SCCF, the County and the "John and Jane Doe" employees of the County in their official capacity, the only remaining claims are those against the SCCF "John and Jane Doe" defendants in their individual capacity. However, it is not possible for the United States Marshals Service ("USMS") to serve those unidentified "John and Jane Doe" defendants.

The Second Circuit has held that district courts must provide incarcerated *pro se* litigants with reasonable assistance in investigating the identity of such "John and Jane Doe" defendants. See Valentin v. Dinkins, 121 F.3d 72 (2d. Cir.1997) (per curiam). Accordingly, it is hereby ordered that the Clerk of the Court serve a copy of this Order on the Suffolk County Attorney and that **within thirty (30) days of the date this Order is served upon it,** the Suffolk County Attorney's Office: (1) attempt to ascertain the identities of the "John and Jane Doe" employees of (a) the SCCF-Riverhead who evaluated and/or treated plaintiff for the injuries he allegedly sustained on or about April 28, 2008, including those employees who prescribed medication to

plaintiff for those injuries, and (b) the SCCF-Yaphank to whom plaintiff allegedly complained of back pain and who provided or failed to provide medical treatment to plaintiff for those complaints; and (2) provide that information, together with the address(es) at which each such employee can be served, to the Court. Once the information is provided to the Court by the Suffolk County Attorney's Office, plaintiff's complaint shall be deemed amended to reflect the full names of the SCCF "John or Jane Doe" defendants, summonses shall be issued as to those defendants and the USMS shall serve those defendants.

III.   Conclusion

Accordingly, it is hereby:

ORDERED that plaintiff's claims against Brookhaven Hospital, the Brookhaven Hospital "John and Jane Doe" employees and the SCCF are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and that no summons shall issue as to those defendants; and it is further,

ORDERED that plaintiff's claims, as construed to be against the County of Suffolk and its employees in their official capacity, are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) **unless plaintiffs files an amended complaint in accordance with this Order within thirty (30) days from the date this Order is served with notice of entry upon him**; and it is further,

ORDERED that the Clerk of the Court shall serve a copy of the summonses, complaint and this Order upon the Suffolk County Attorney; and it is further,

ORDERED that the Suffolk County Attorney shall (1) attempt to ascertain the full names

of the "John or Jane Doe" employees at the SCCF as set forth in this Order and (2) provide that information, as well as the addresses at which those individuals can currently be served, to the Court **within thirty (30) days from the date this Order is served upon it**, and that the government need not undertake to defend or indemnify these individuals at this juncture; and it is further,

ORDERED that once the SCCF "John and Jane Doe" defendants have been identified, (1) plaintiff's complaint shall be deemed amended to reflect the full names of those individuals as defendants in their individual capacity only, (2) summonses shall issue as to each of those defendants and (3) the USMS shall serve those defendants with the summons, complaint and this Order without prepayment of the filing fee; and it is further,

ORDERED that the Clerk of the Court shall serve notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address. Fed. R. Civ. P. 5(b)(2)(C).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
Sandra F. Feuerstein
United States District Judge

Dated: August 24, 2011
Central Islip, New York